## Louis G. Bostedo v. Board of Trade of the City of Chicago.

### Gen. No. 12,849.

1. BOARD OF TRADE—*when has jurisdiction to discipline.* A holder of a certificate of membership in the board of trade does not cease to be a member after assignment of his certificate until all the rules of the board respecting a change of ownership in such certificate have been complied with, and until such time the board retains jurisdiction to discipline.

2. BOARD OF TRADE—*when estoppel to question reasonableness of rules exists.* A member of the board of trade who has been admitted to such membership in subordination to existing rules, is estopped to deny their reasonableness.

3. BOARD OF TRADE—*what does not preclude, from disciplining member violating rule prohibiting conducting of bucket shops.* The fact that the member sought to be disciplined handled only corporate stocks not dealt with on the board in nowise affects the power of such board.

4. BOARD OF TRADE—*when injunction does not lie against.* The courts will not interfere to prevent the board of trade proceeding to try a member under a charge of violating any of its by-laws or rules laid down for the government of its members.

Bill for injunction. Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in this court at the March term, 1906. Affirmed. Opinion filed December 13, 1906. Rehearing denied December 24, 1906.

GEORGE S. BAKER and STEIN, MAYER, STEIN & HUME, for appellant; PHILIP STEIN of counsel.

HENRY S. ROBBINS, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Appellant, a member of appellee Board of Trade, filed his bill in the Circuit Court to enjoin appellee from proceeding to try him upon charges of violating section 8 of rule 4 of the Board of Trade, which reads in part that "any member of the association who shall be interested in business with, or who shall act as the representative of, or who shall knowingly execute any order or orders for the account of any organization, firm or individual engaged in the business of dealing in differences on the fluctuations in the market price of any commodity or corporate stock—without a *bona fide* purchase and sale of the article for an actual delivery; or who shall be a member of, or shall, in his own behalf, or as agent, directly or indirectly make, execute, or give, any orders for a trade or transaction in or upon any bucket shop,  *  *  *  shall be deemed guilty of unmercantile conduct which renders him unworthy to be a member of the association; and upon complaint to and conviction thereof by the board of directors, he shall be expelled from membership in this association."

The facts involved and not disputed are that Bostedo before being admitted to membership in the Board of Trade, signed the following agreement: "We, the undersigned members of the Board of Trade of the City of Chicago, do by our respective signatures and by virtue of our membership in said corporation, hereby mutually agree and covenant with each other and with the said corporation, that we will, in our actions and dealings with each other and with the said corporation, be in all respects governed by

and respect the rules, regulations and by-laws of the said corporation as they now exist, or as they may be hereafter modified, altered or amended."

The violation complained about is that Bostedo, prior to September 9, 1905, had a telegraph wire connecting his office in Chicago with the office of the Cella Commission Company in St. Louis, a "bucket shop," and transmitted over that wire orders for the sale and purchase of stocks of various corporations for customers, which orders were not *bona fide* purchases and sales for actual delivery. The charges were filed on September 12, 1905, and on September 9, 1905, Bostedo agreed to sell his membership to one Van Dorn for $2,850. Membership may be transferred only as provided by section 2, rule X, which, among other things, provides: "If the member in whose name said Certificate stands has paid all assessments due, and has against him no outstanding, unadjusted or unsettled claims or contracts held by members of the association, and said membership is not in any way impaired or forfeited, it shall, upon the payment of twenty-five (25) dollars, be transferrable upon the books of the association to any person eligible to membership who may be approved by the board of directors after due notice, by posting, as provided in section 1 of this rule. * * * Prior to the transfer of any membership application for such transfer shall be posted upon the bulletin of the exchange for at least ten days, when, if no objection is made, it shall be assumed the member has no outstanding claims against him."

Van Dorn at the time of filing the charges had not been approved for membership by the board of directors, in pursuance of this rule; neither had notice of intended transfer been posted upon the bulletin of the exchange for ten days, as required by said rule, at the time of making such assignment or when the charges were lodged against Bostedo. A temporary injunction was granted on filing the bill.

The cause was heard in the Circuit Court upon a stipulation that the pleadings, including the amended bill and the answer, should be treated as the deposition of the parties, and the testimony of one witness, George E. Gooch, when the injunction was dissolved, the bill as amended was dismissed for want of equity and · a judgment for costs rendered against appellant, to reverse which this appeal is prosecuted, and the action of the court in so dissolving the injunction and dismissing the bill with costs against appellant is assigned as error.

Most of the points raised in this record have been definitely and expressly settled in this jurisdiction contrary to the contentions of appellant, and are no longer open to debate. It is settled beyond the realm of doubt that the Board of Trade had power to pass the by-laws in question, expressly authorized so to do by its charter; that the same are reasonable, and whether or not they are reasonable, the courts have not the power to determine. It is affirmatively decided that the courts have no such visitorial power over the Board of Trade as justifies its interference with its disciplinary methods, or to compel it to reinstate a member who has been expelled pursuant to its by-laws, and that in this regard the Board of Trade, though incorporated, is akin to unincorporated associations, such as churches, clubs, fraternal societies, etc., and is the sole arbiter as to the qualifications of its members, as to whom it will admit to membership and who expel from such membership after admission. This is certainly the effect of the decision in Rice v. Board of Trade, 80 Ill. 134, as this court adjudged in People ex rel. Dobson and appellee, *supra,* in this language: ''In that case—the Rice—the court certainly placed the Board of Trade of Chicago in the same class as churches, Masonic bodies, Odd Fellows and Temperance lodges, and impliedly at least declared that the relator had no such interest or legal right to membership in the board as would be re-

garded by a court of justice, and that the court would, under no circumstances, interfere to restore an expelled member by mandamus. So the Supreme Court of Wisconsin in State v. Chamber of Commerce, 47 Wis. 670-682, construed the language, and so did the text-book writers on stock exchanges.'' We are unable, in the light of the decisions of this and the Supreme Court, to vary or modify the patent ruling of the Rice case, or to distinguish it as inapplicable upon principle to the case at bar. Neither are we able to hold, as urged by the distinguished counsel for appellant, that the decision of this court was wrong in the Dobson case, or that we have erred in our interpretation of the decisions of the Supreme Court in our application of them to the Dobson case.

It is urged upon us that the Board of Trade is without jurisdiction to discipline Bostedo by trial or otherwise as a member, because his membership was assigned to Van Dorn three days before the lodging of a complaint against him. It is too clear to admit of contention, that any assignment of membership is abortive unless and until the rules of the board governing transfers are met. Two things are essential of concurrence before such an assignment is complete or effective. One is the posting of a notice upon the Exchange bulletin for ten days, and the other is the approval of the board of directors of the applicant under the assignment for membership. Applying these conditions to the case here presented, Bostedo is a member until these conditions have been met and Van Dorn finally approved for membership by the board of directors. Until then Bostedo is a member of the board and subject to be disciplined under the rules even to the extreme of losing his membership by expulsion after trial upon charges in the meantime preferred. So that, being a member, he is subject to the disciplinary powers of the board under the rules. Bostedo agreed as a condition of his membership at the time of his admission to be ''in all respects gov-

erned by and respect the rules, regulations and by-laws" of the board as then existing, or as they might be at any time "modified, altered or amended." The record discloses that the rule which Bostedo is charged with violating was a rule of the board at the time he became a member, to which he subscribed and is bound. If the reasonableness of the rule was here open for review upon well-settled legal principles, too familiar to need citation of authority to support, he is estopped by his contract of membership, in subordination to which he was admitted a member of the board, to now dispute it in any manner or for any purpose.

It is, however, asserted with much confidence and force, that the offense charged against Bostedo is no infringement of any rule of the board; but relates to a matter about which the board has no concern, and to property in which the board does not, under its charter or by-laws, take cognizance, deals in which are not made upon its exchange, such commodity being entirely foreign to and aside from 'the purposes of the board's organization. Without conceding our jurisdiction to interfere with or disturb the action of the board in whatever it has done or may do under these charges, we will proceed to a discussion of the merits of the contention from the view point of the board and the law controlling it.

Section 8 of rule 4 is the rule prohibiting members from dealing in or having any business connection with "bucket shops" so called. The term "bucket shop" has a well understood and clearly defined meaning in our law, and in grain and stock exchanges. The keeping of a "bucket shop" is made a criminal offense by section 137, chapter 38, R. S. Criminal Code, and the rule in question is in accord in principle with this statutory enactment. While it may be true that the Board of Trade does not include within the scope of its operations dealings in corporate stocks, yet the rule in express terms forbids its members to so deal

in corporate stock, the language used being that if "any member of the association who shall be interested in business with or who shall act as the representative of, or who shall knowingly execute any order or orders for the account of any organization, firm or individual engaged in the business of dealing in differences on the fluctuations in the market price of any commodity or corporate stock, without a *bona fide* purchase and sale of the article for an actual delivery, or shall in his own behalf, or as agent, directly or indirectly make, execute or give any orders for a trade or transaction in or upon any *bucket shop* * * * shall be deemed guilty of unmercantile conduct which renders him unworthy to be a member of the association, and upon complaint and conviction thereof by the board of directors, he shall be expelled from membership in this association."

From this rule it is apparent that the Board of Trade was unwilling to have upon its roll members who were guilty of violating the Criminal Code of this state by transacting business in bucket shops, including dealing in corporate stocks as well as commodities dealt in on the exchange of the board. One of the expressed objects of the board is "to inculcate principles of justice and equity in trade." (R. p. 100.) The fact that the bucket shopping for which Bostedo is sought to be disciplined is in relation to deals in corporate stock not dealt in on the exchange of the board and not concerning any other member of the board, does not affect the right or power of the board to enforce the rule against him. This question is similar to the one raised in Haebler v. N. Y. Produce Exchange, 149 N. Y. 414, in which the court said, on page 425: "Nor do we think the respondents claim that the defendant had no jurisdiction because the contract was not made upon the floor of the exchange, can be sustained. In People ex rel. Thatcher v. New York Commercial Association (18 Abb. Pr. 271), where a similar question arose under the by-law we are now

considering, it was held that the corporation might expel a member for a breach of his duty toward it, or for any act in contravention of the purposes for which the charter was obtained; and that, as the charter stated that the company was formed, among other things, to inculcate just and equitable principles in trade, it might expel a member for wrongfully obtaining goods, although the offense was not committed on the floor of the exchange nor against a member of the association.'' The rule in question was undoubtedly intended to regulate as well the conduct of members in transactions resting in contracts made away from the board as those made upon the floor of its exchange.

In Wood v. Chamber of Commerce, 119 Wis. 365, it was held that the by-law of the Chamber of Commerce ''to promote just and equitable principles in trade''— virtually the same as that in dispute here—did not restrict the exercise of disciplinary powers to transactions upon the floor of the exchange, or to contracts between members, but extended to dealings with non-members, although made outside of the local jurisdiction of the exchange. This case also holds that an assignment by a member of his certificate of membership, where the assignee has not been accepted as a member of the board of directors, did not deprive the Chamber of Commerce of jurisdiction to try the member under charges preferred against him. This statement of the law is applicable to this case, and will be held to govern and control our decision on this point.

It is settled law that the courts will not interfere to prevent the board from proceeding to try a member under a charge of violating any of its by-laws or rules laid down for the government of its members. This precise question has many times been before the courts, resulting in an uniformity of decision which cannot now be disturbed. Sturges v. Board of Trade,

86 Ill. 441; Green v. Board of Trade, 174 Ill. 585; Wood v. Chamber of Commerce, *et seq.;* Board of Trade v. Riordan, 94 Ill. App. 298; Board of Trade v. Nelson, 162 Ill. 431.

We find no reversible error in the decree of the Circuit Court, and it is affirmed.

*Affirmed.*