JOHN P. JEFFREY SR., *et al. v.* SPRUCE-BOONE LAND COMPANY *et al.*

(No. 7235)

Submitted May 17, 1932.   Decided May 24, 1932.

*Payne, Minor & Bouchelle* and *John V. Ray,* for appellants.
*Leftwich & Shaffer,* for appellees.

MAXWELL, JUDGE:

The problem is whether by the following deed there was conveyed any mineral other than coal.

December 4, 1916, Amanda Jeffrey and John P. Jeffrey, her husband, conveyed to T. Truxton Stiles, Jr., and C. R. Conner ''all the coal and mineral in and to that certain tract of land upon which they now reside, situate on the Spruce Fork of Little Coal River in Washington District, Boone County, West Virginia, * * * together with all mining rights and privileges in and under said land for the purpose of mining and marketing said coal and the privilege of hauling coal from any adjoining lands owned by them, or which they may hereafter acquire, and they also convey the surface of so much of said tract as follows, to-wit: * * * being approximately thirty (30) acres, hereby conveying a fee simple title to the said lands last herein described of about thirty (30) acres, and the mineral on the residue of the tract.''

On behalf of the plaintiffs it is testified that no mineral other than coal was intended to be conveyed. On behalf of the defendants it is testified that all minerals were deemed embraced in the grant at the time thereof.

Beginning with 1917 the plaintiffs have been assessed only with surface; the defendants with both surface (different acreage from that assessed to the plaintiffs) and minerals. In January, 1917, the same grantors conveyed to the same grantees ''all their right, title and interest in that certain surface of a strip or parcel of land, being all the surface of the Amanda Jeffrey tract lying on the west side of Spruce Fork * * * the mineral under this land having been transferred to the said Conner and Stiles by deed dated the 4th day of December, 1916.'' In 1923 and 1925 the grantors conveyed to each of three sons a separate parcel of the land remaining after the grant of 1916. The first deed contained this exception: ''The said parties of the first part also reserve the mineral rights heretofore conveyed to a mineral

362

company said parties of the first part hereby reserve the right to hold and gather all the crops on said lands for this year.'' The second: "The said parties of the first part hereby reserve the mineral rights which have been conveyed away to a mineral company, from the property herein conveyed.'' The third: "The mineral rights are hereby reserved from this conveyance by the parties of the first part.''

In 1928 a cut in a hillside incident to public highway construction disclosed on this property a stratum of stone useful and valuable in the grinding of woodpulp for the manufacture of paper. The heirs of Amanda Jeffrey assert title to this stratum and have undertaken to lease the same for operation. They say that no mineral but coal was conveyed away by the deed of December 4, 1916. Defendant, Spruce-Boone Land Company, successor of the grantees, also claims the stone, asserting that by said deed title passed to all the minerals in said land.

The oral testimony adverted to being conflicting and not throwing much light on the question, the problem must be determined from the deed itself and from other record evidence.

The grant was of "all the coal and mineral". Note the conjunctive. "The word 'mineral' in its ordinary and common meaning is a comprehensive term including every description of stone and rock deposit whether containing metallic or non-metallic substances. * * * Where there is a grant or reservation of minerals without other words of limitation or restriction, all minerals would be granted or reserved, and if the ordinary and accepted meaning is to be changed or restricted the language used to do so must be reasonably clear to show that intent.'' *Waugh* v. *Land & Coal Co.*, 103 W. Va. 567, 137 S. E. 895. So, we must say, that by the deed of December 4, 1916, all inorganic substances in the land were included in the term "mineral" unless a contrary intention clearly appears from the face of the deed or from the subsequent conduct of the parties.

What is the effect of the reservation of mining rights and privileges as quoted above? Plaintiffs say that there is there-

by manifested an intention to provide privileges only for the mining and removal of coal, thereby bringing this case within the rule of *Rock House Fork Land Company* v. *Tile Co.*, 83 W. Va. 20, 97 S. E. 684, wherein there was a grant of "all the coal and other minerals of every kind and description except gas and oil in and underlying said land." The mining rights reserved were such, in the judgment of the court, as were incident to the mining and removal of minerals by means of shafting or tunneling. It was held that brick clay was not included in the grant. That case stood solely on the grant of the coal and other minerals and the mining rights detailed in the deed. There was nothing else in the deed and no subsequent conduct of the parties to throw light on the intention of the parties. The situation at bar is entirely different.

First as to the mining rights conveyed. The grant of the coal carried with it the rights and privileges necessary for its mining and removal. The rights granted added nothing in that particular. The main purpose accomplished was the creation of the right of hauling coal from adjoining property. This seems to have been the dominant intention in the granting of mining rights. So, we think it cannot properly be said there is anything in the mining rights and privileges granted which indicates an intention on the part of the grantors to limit the mineral granted to coal only.

After granting the coal and mineral and mining rights the deed also grants thirty acres of surface overlying a part of the coal and mineral granted by the first paragraph of the deed. "The word 'surface' when used without any qualifying phrase in a deed, ordinarily signifies only the superficial part of land." *Drummond* v. *Fuel Co.*, 104 W. Va. 368, 140 S. E. 51. The surface grant is followed by the above quoted words: "* * * hereby conveying a fee simple title to the said land last herein described of about thirty (30) acres, and the mineral on the residue of the tract." Now if the coal and mineral granted plus the surface constitutes the whole of the thirty acres in fee simple, then, by an inverse process, the whole less the surface, would leave

all underlying strata. If the sum of two things equal the whole, the whole less the one leaves the other. The same granting clause which granted the mineral under the thirty acres granted the mineral under the whole of the tract. Hence, since the grantors by their deed clearly indicated their intention that the phrase "coal and mineral" should include all strata underlying the surface of the thirty acres, it follows that the same meaning must be given to the same words as they pertain to the residue of the tract.

The action of the grantors in excepting and reserving minerals in the three subsequent conveyances to their sons points in the same direction. This is particularly true of the last of the said three conveyances wherein this language is used: "The mineral rights are hereby reserved from this conveyance by the parties of the first part."

, While the manner of the assessment of the property subsequent to 1916 would of course not be controlling as against either of the parties, it may properly be looked to as indicative of the construction which the parties themselves placed upon their respective holdings. As already noted, Amanda Jeffrey's remaining interest in the property was assessed only as surface. Since 1917, she or her heirs have paid the taxes on the property under that assessment. The interest which she conveyed away was assessed in part as surface and in part as minerals.

Thus, finding nothing in the deed itself or in the subsequent conduct of the parties as disclosed by the record evidence to indicate an intention on the part of the grantors to limit or curtail the meaning of the term "mineral" as used in the deed, both granting clause and habendum, we hold that that term as used must be given its accepted meaning.

The circuit court having reached the conclusion that the aforesaid deed of December 4, 1916, conveyed only the coal and mining rights recited, declared void certain subsequent deeds and leases of the grantees and their assigns which dealt with the property on the theory that all minerals in the land were conveyed by said deed. For reasons which we have pre-

sented, we are of opinion that the distinguished chancellor was in error both in his initial finding and in those which were incident thereto. Therefore, we reverse the decree and dismiss the bill.

*Reversed; bill dismissed.*