304 S.E.2d 358

**Emmajean ALLRED**

v.

**The CITY OF HUNTINGTON; James L. Poling; et al.**

**No. 15528.**

Supreme Court of Appeals of West Virginia.

Decided June 23, 1983.

James Allan Colburn and Helen M. Morris, Baer & Colburn, Huntington, for appellant.

Charles F. Albright and Ralph L. Booten II, Huntington, for City of Huntington.

James W. St. Clair, Marshall & St. Clair, Huntington, for James L. Poling, et al.

PER CURIAM:

This appeal by Emmajean Allred from an order of the Circuit Court of Cabell County raises the question of whether a carport is a structure which must be built in compliance with the set-back restrictions contained in a municipal zoning ordinance and in a deed. The Circuit Court of Cabell County in the proceedings below, in effect, found that it was not. We disagree, and we reverse the judgment of the Circuit Court of Cabell County.

The appellant, Emmajean Allred, and the appellees, the Polings, own adjoining homes in the Wallace Circle subdivision area of Huntington. Deeds in the chains of title to both parcels of property contain restrictive covenants regarding set-back lines shown on the recorded subdivision map.[1] In addition, the City of Huntington's zoning ordinance imposes set-back restrictions on structures in the area.

In the Spring of 1981 the Polings began construction of a garage addition to their home. The appellant, being of the view that the construction violated the set-back restrictions, contacted the City. The City issued a restraining order to prohibit the construction pending an investigation. Subsequently, the City Zoning Administrator concluded that the construction was not in violation of the City's zoning ordinance, and the restraining order was lifted. The appellant appealed to the Board of Zoning Appeals and petitioned the Circuit Court of Cabell County to enjoin the construction.[2]

---

**1.** The restrictive covenant is worded as follows:
"The building line of the several lots fronting on Wallace Circle is indicated by _____ and the main foundation of any permanent structure erected on any such lot shall not be built closer to the street line of the Circle than the building line."

**2.** We note that the Polings assert in their brief that:

"The record is devoid of any of the facts to support the statement of facts asserted by the plaintiff concerning the transactions before the Board of Zoning Appeals, the decision of the Board of Zoning Appeals or any other matter in connection therewith ..."
However, we find that the circuit court in its order entered October 2, 1981, specifically found:

The Board of Zoning Appeals determined that the construction was not in violation of the zoning ordinances. The circuit court, on the other hand, issued a temporary injunction on June 30, 1981, and scheduled hearings in the matter. At the conclusion of the hearings the court, on October 2, 1981, entered a final order in the matter. The court determined that the wall and main foundation of the corner of the new structure encroached approximately eight feet across the set-back line, that such encroachment violated building restrictions, and that the construction caused the appellant permanent and irreparable injury. The court ordered that the Polings remove the sides of the garage. The court, however, moulded its order to allow the Polings to leave in place the roof and storage room of the garage and also a column which supported the roof. The room, roof and column extended beyond the set-back line. The court, in effect, allowed the Polings to build a type of carport beyond the set-back line.

On appeal the appellant claims that the circuit court erred in moulding the injunction so as to allow the storage room, roof, and column to remain beyond the set-back line.

We discussed the validity of restrictions such as the ones now before us in *Wallace v. St. Clair*, 147 W.Va. 377, 389, 127 S.E.2d 742, 751 (1962):

"Zoning regulations and building restrictions imposed by municipalities are an accepted part of modern community life. Similar ends are frequently accomplished in developments of residential areas, as in the present case, by the voluntary, contractual acts of property owners by means of restrictive covenants similar in nature to that which is herein involved. Such restrictive covenants are not against public policy. *Ballard v. Kitchen*, 128 W.Va. 276, 282, 36 S.E.2d [390] 391, 393. They do not place a restraint upon alienation. Their purpose is

lawful and laudable. If the restrictions are reasonable in nature and purpose, they are upheld."

▮ Regarding set-back lines in particular we stated in syllabus point 1 of *Kaminsky v. Barr*, 106 W.Va. 201, 145 S.E. 267 (1928):

"Where there is contained in the deeds for lots on a street in a municipality a restriction against the construction of buildings within a fixed distance from the street line there is thereby created a covenant running with the land, for the benefit of all the lot owners similarly situated, which covenant will ordinarily be enforced by courts of equity."

The validity of such restrictions is also discussed and recognized in *Withers v. Ward*, 86 W.Va. 558, 104 S.E. 96 (1920).

In *Recco v. Chesapeake & O. Ry. Co.*, 127 W.Va. 321, 32 S.E.2d 449 (1944), we noted that where an owner of property subdivides it and sells it to various grantees by deeds containing the same covenants, and the lots are sold to subsequent grantees, each will be charged with constructive notice of the covenants in the original deed under which he claims.

▮ Given this authority, we are of the view that the set back restrictions contained in the deeds of the parties in the proceeding now before us are valid. We observe that although changes in a neighborhood's character can nullify restrictive covenants affecting neighborhood property, *Morris v. Nease*, 160 W.Va. 774, 238 S.E.2d 844 (1977), there was no significant evidence in the case before us to justify a finding that the Wallace Circle subdivision had so changed as to nullify the restrictions. We, therefore, conclude that the Polings were and are bound by the set-back restrictions.

Having come to this conclusion, we are confronted by the question of whether the restrictions contained in the Poling's deed

"The plaintiff herein made demand upon the City of Huntington and its planning and zoning offices to enforce and prohibit the building of a certain additional structure to the existing residential structure belonging to

the defendants, James L. Poling and Edith M. Poling."
In view of the court's finding, we give credence to Ms. Allred's version of the facts.

forbade the type of construction allowed by the Circuit Court of Cabell County.

We are unaware of any West Virginia case discussing the question of whether a structure of the type involved in the case before us is permissible under the type of restrictions binding the Polings. It appears that the decisions from other jurisdictions depend to a large extent on the particular facts presented. Two decisions have discussed carports. In *Staley v. Mears*, 13 Ill.App.2d 451, 142 N.E.2d 835 (1957), the court found it unnecessary to discuss the question of whether the carport in question was an offending structure since it was unclear where the set-off line was actually located. The second case, *Hanna v. Nowell*, 330 S.W.2d 595 (Mo.App.1959), involved the question of whether a carport was too close to a boundary line in violation of a restriction. The restriction forbade the erection of any building which, with the exception of "eaves", extended closer than eight feet to an adjoining property line. The court, while specifically addressing the question of whether the structure was an "eave", held, by implication, that the structure violated the restriction.

A number of other cases have discussed whether similar structures were permissible. In *Gilbert v. Repertory, Inc.*, 302 Mass. 105, 18 N.E.2d 437 (1939), it was held that the erection of two marquees violated a restrictive covenant requiring that a structure, with certain exceptions, be set back fifteen feet from an avenue. In *Sahm v. Poushter*, 187 Misc. 486, 63 N.Y. S.2d 328 (1946), it was stated that the construction of sun porches violated a set-back restriction. A canvas-roofed vegetable stand was held to be a "building" violating a building line restriction, *McGalliard v. Chapman*, 3 N.J.Misc. 609, 129 A. 256 (1925) as was a greenhouse, *Hultin v. Klein*, 301 Ill. 94, 133 N.E. 660 (1922).

 We are persuaded by these authorities that the construction allowed by the Circuit Court of Cabell County is sufficiently substantial to be deemed a "structure".

It appears from the court's order that the roof of this structure must be supported by a column and that that column rests on the ground and has its main and only foundation in the prohibited zone as delimited by the restrictive covenants in the parties' deeds. The fact that the structure rests on a column and foundation within the prohibited zone leads us to conclude that the circuit court erred in allowing the structure and that syllabus point 1 of *Kaminsky v. Barr, supra*, dictates that the construction be enjoined.

 In their brief the Polings contends that Ms. Allred is estopped from bringing her action.[3] They argue that they had no idea of the restrictive covenant in their chain of title when they began the construction of the garage. They also argue that Ms. Allred allowed them to proceed with the construction and did not express her displeasure until the construction was almost completed. As indicated above, we held in *Recco v. Chesapeake & O. Ry. Co.* that where an owner of property subdivides it and sells it to various grantees by deeds containing the same covenants, and lots are sold to subsequent grantees, each will be charged with constructive notice of the covenants in the original deed under which he claims. It also appears that Ms. Allred did protest to the Huntington zoning authorities about the construction before it was substantially complete. We believe that the Polings were aware of her displeasure with it and that their assertions of estoppel are without merit.

For the reasons stated the judgment of the Circuit Court of Cabell County is reversed, and the case is remanded with directions that the circuit court order that the Polings remove that portion of the structure which violates the set-back zone established by the covenant in their chain of title.

Reversed and remanded.

**3.** We believe that since the proceeding before us involves an injunction, the real question is not whether Ms. Allred is estopped but whether she is barred by laches from seeking relief. However, since our conclusion would be the same, we discuss the question in terms of estoppel.